**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**FRANKI L.,**

                          **Plaintiff,**                **6:18-cv-741**
                                                        **(GLS)**

           **v.**

**COMMISSIONER OF**
**SOCIAL SECURITY,**

                          **Defendant.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Office of Peter W. Antonowicz       PETER W. ANTONOWICZ, ESQ.
148 West Dominick Street
Rome, NY 13440

**FOR THE DEFENDANT:**
HON. GRANT C. JACQUITH        CATHARINE L. ZURBRUGG
United States Attorney               Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Ellen E. Sovern
Acting Regional Chief Counsel
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Franki L. challenges the Commissioner of Social Security's denial of Social Security Disability Insurance (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Franki's arguments, the Commissioner's decision is affirmed and the complaint is dismissed.

### II. Background

Franki applied for DIB in 2013 and SSI benefits in 2014. (Tr.[1] at 245-46, 375-85.) When her applications were denied, (*id.* at 250-65), she requested a hearing before an Administrative Law Judge (ALJ), (*id.* at 266-68), which was held on January 11, 2016, (*id.* at 163-95), and continued on June 27, 2016, (*id.* at 196-212). On September 6, 2016, the ALJ issued a decision denying Franki's claims for DIB and SSI benefits, (*id.* at 146-56), which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review, (*id.* at 1-7).

---

[1] Page references preceded by "Tr." are to the administrative transcript. (Dkt. No. 8.)

Franki commenced the present action on June 25, 2018 by filing her complaint, wherein she seeks review of the Commissioner's determination. (*See generally* Compl.)  Thereafter, the Commissioner filed a certified copy of the administrative transcript.  (Dkt. No. 8.)  Each party filed a brief seeking judgment on the pleadings.  (Dkt. Nos. 11, 14.)

## III.  <u>Contentions</u>

Franki contends that (1) the ALJ erred by failing to address the Appendix listing that pertains to spine disorders and (2) her residual functional capacity (RFC) determination was flawed because the ALJ did not properly evaluate opinion evidence or consider the full extent of non-exertional limitations.  (Dkt. No. 11 at 12-16.)  The Commissioner counters that "[t]he ALJ correctly determined that [Franki] was not disabled, citing substantial evidence, and her decision was free of reversible legal error." (Dkt. No. 14 at 13.)

## IV.  <u>Facts</u>

The court adopts the parties' factual recitations to the extent they are consistent with the statement of facts contained in the ALJ's decision and supported by the medical record.  (Tr. at 146-56; Dkt. No. 11 at 3-9; Dkt. No. 14 at 2-10.)

## V.  Standard of Review

The standard for reviewing the Commissioner's final decision under

42 U.S.C. § 405(g)[2] is well established and will not be repeated here.  For

a full discussion of the standard and the five-step process by which the

Commissioner evaluates whether a claimant is disabled under the Act, the

court refers the parties to its previous decision in *Christiana v. Comm'r of*

*Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-*3 (N.D.N.Y.

Mar. 19, 2008).

## VI.  Discussion

### A.    Consideration of Listing 1.04

Contrary to Franki's assertion that "[the ALJ] never addresse[d] the

listing that pertains to disorders of the spine," (Dkt. No. 11 at 12 (citing

Listing 1.04)), the ALJ clearly considered this listing, (Tr. at 149).

Specifically, the ALJ found that "[t]he medical evidence does not establish

the requisite evidence of nerve root compression, spinal arachnoiditis[,] or

lumbar spinal stenosis as required under **listing 1.04**" and "there is no

evidence that [Franki]'s spine disorders have resulted in an inability to

---

[2] The § 405(g) standard of review in DIB proceedings brought under Title II of the Act also applies to SSI proceedings under Title XVI of the Act.  *See* 42 U.S.C. § 1383(c)(3).  Similarly, the analysis of SSI claims under Title XVI parallels, in relevant part, the statutory and regulatory framework applicable to DIB claims under Title II.  *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

ambulate effectively, as defined in 1.00(B)(2)(b)." (*Id.* (emphasis added).) Although Franki does not specifically argue that the ALJ's determination in this regard was not supported by substantial evidence, (Dkt. No. 11 at 12-13), the court nonetheless finds that it was for the reasons stated by the Commissioner, (Dkt. No. 14 at 13-14).

**B.    RFC**

*1.    Evaluation of Opinion Evidence*

In a hodgepodge of inarticulate paragraphs, Franki seems to argue that the RFC was improper based on the ALJ's errors in failing to afford greater weight to Dr. Anthony Lapinsky's opinion and affording significant weight to Dr. Tanya Perkins-Mwantuali's opinion.  (Dkt. No. 11 at 14-16.)

To be sure, the ALJ afforded "some weight" to Dr. Lapinsky's opinion "as it is from a treating source familiar with [Franki]'s progress" but found that "[his] assessed limitations for sitting and standing are unsupported by the objective evidence of record and [Franki]'s presentation at the hearing."[3]  (Tr. at 153.)  For instance, physical examinations noted that

---

[3] As relevant here, Dr. Lapinsky opined that Franki could sit, stand, and walk for one hour in an eight-hour workday and for "10 minutes or less at one time" and "need[ed] to l[ie] down intermittently throughout the day."  (Tr. at 976-77.)

Franki came in unassisted, had a normal gait and stance, had "no deficit of the right leg and left leg," needed no assistive device, had intact reflexes, retained full strength in her upper extremities (5 out of 5) as well as nearly full strength in her lower extremities (4 out of 5), and could walk on her heels and toes without difficulty. (*Id.* at 488, 492-93, 708-10.) Although diagnostic tests showed several disc herniations, an annular tear in the lumbar spine, and a labral tear in the hip, (*id.* 488-89, 502, 507-08), there was also evidence in the record that Franki's symptoms were relieved or improved with treatment, (*id.* at 489, 496, 509, 1009). Furthermore, as the ALJ explained, Franki was able to stand at the hearing and lean very far to the left, putting all her weight on her left lower extremity, which was also inconsistent with her allegations of constant left hip pain as well as Dr. Lapinsky's opinion. (*Id.* at 153, 175, 184, 976-77.)

Notably, Dr. Lapinsky's opinion was also inconsistent with the opinion of Franki's other treating physician, Dr. John Sullivan, who opined that she could lift and carry twenty pounds or less; stand/walk for six hours at one time and for seven hours in an eight-hour workday; and sit for six hours at one time and for eight hours in an eight-hour workday. (*Id.* at 983.) The ALJ gave Dr. Sullivan's opinion more weight than Dr. Lapinsky's opinion

because it was from a treating source familiar with Franki's progress and consistent with the record evidence discussed above. (*Id.* at 153, 983-84.) Dr. Sullivan's opinion was also buttressed by Franki's daily activities. (*Id.* at 152-53.) For instance, Franki could do laundry, shop, and handle childcare, (*id.* at 708); she had no difficulty taking care of herself, (*id.* at 491); and she was previously taking classes to become a health information technician, (*id.* at 717). Additionally, Franki had previously spent several days working at a Victorian Fair, and continued to attend similar events, which required walking and sitting for prolonged periods of time. (*Id.* at 174, 775, 859.) She also reported that she spent her days taking walks. (*Id.* at 220.) Accordingly, the ALJ was justified in affording only some weight to Dr. Lapinsky's opinion.

For similar reasons, the ALJ did not err in giving Dr. Perkins-Mwantuali opinion significant weight. (*Id.* at 153.) Dr. Perkins-Mwantuali examined Franki and found that she had moderate to marked limitations in bending, twisting, lifting, pushing, pulling, reaching, carrying, kneeling, crawling, squatting, and climbing; however, she did not assess any limitations in sitting, standing, or walking, and noted that Franki's gait and station were normal at the exam. (*Id.* at 708, 711.) This

opinion was consistent with the record evidence mentioned above. Furthermore, the court does not find Dr. Perkins-Mwantuali's opinion to be "imprecise," as Franki asserts, (Dkt. No. 11 at 14), given the accompanying detailed examination report, (Tr. at 708-11).

### 2. Franki's Non-exertional Limitations

Lastly, Franki argues that the ALJ erred by failing to form an RFC that included non-exertional limitations, such as "the moderate limitation in maintaining a schedule or routine." (Dkt. No. 11 at 14-16.) However, the ALJ appropriately considered and applied the findings by Dr. Jacqueline Santoro and Dr. H. Tzetzo in formulating an RFC. (Tr. at 154.) Specifically, the ALJ found that certain aspects of Dr. Santoro's assessment were entitled to great weight because her opinion was rendered after an examination and supported by record evidence, but Dr. Tzetzo's opinion was entitled to little weight because he never examined Franki. (*Id.*) For instance, the shared opinion of Drs. Santoro and Tzetzo that Franki had only moderate limitations in maintaining a regular schedule, (*id.* at 216, 224), was supported by record evidence that Franki was able to arrive to medical appointments on time, (*id.* at 770, 968), and take public transportation, (*id.* at 220). However, it was appropriate to reject Dr.

Santoro's additional finding that Franki had "psychiatric problems" that "may significantly interfere with her ability to function on a daily basis." (*Id.* at 705); *see Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (finding ALJ was free to accept portions of opinion that were supported by evidence and reject those that were not). Additionally, it was appropriate not to assign greater weight to the opinions of Brittany Bogardus, LMSW, and Marc McDowell, LMSW, that Franki was very limited in her ability to interact with others, (*id.* at 776, 794-95). For instance, there was evidence that Franki had friends, (*id.* at 178, 188); drank socially, (*id.* at 708); appeared pleasant, alert, and oriented at examinations, (*id.* at 488, 985-86); had detailed conversations with doctors, (*id.* at 489, 494, 499, 509); was previously able to interact with others at Victorian fairs as well as at prior jobs that required conversing on the telephone, (*id.* at 170-71, 175, 204); could adequately relate to others and be cooperative, (*id.* at 704); was able to teach her son how to make a few meals, (*id.* at 177); had a normal mood and appropriate affect, (*id.* at 673); and could effectively engage with the ALJ as well as her attorney at the hearing, (*id.* at 168-93). Accordingly, the ALJ did not err in weighing these opinions.

Lastly, contrary to Franki's assertion, (Dkt. No. 11 at 7), the ALJ

incorporated the non-exertional limitations that were supported by substantial evidence into his RFC determination by calling for a "low-stress environment" and "routine tasks that do not significantly change in shift, pace, or location on a daily basis." (Tr. at 150.) This RFC determination was part of the second hypothetical question posed to the vocational expert, and did not change his opinion that there existed jobs in significant number in the national economy that an individual such as Franki could perform. (*Id.* at 209-10.) Accordingly, the ALJ properly determined the non-exertional limitations that factored into his RFC determination, and substantial evidence supported that determination.

**C.** **Remaining Findings and Conclusions**

After careful review of the record, the court affirms the remainder of the ALJ's decision, as it is supported by substantial evidence.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Franki L.'s complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 27, 2019
Albany, New York

Gary L. Sharpe
U.S. District Judge